# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____-cv

Judge _____ Magistrate _____

J. HENRY KREMERS,

     Plaintiff

vs.

JOSEPH GLENN COMMODITIES, LLC,
and ANTHONY J. PULIERI

     Defendants.
_____/

## COMPLAINT

Plaintiff, J. Henry Kremers, by and through his undersigned counsel, sues Defendant, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri, says and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this civil action pursuant to: (i) 28 U.S.C. §1331 (federal question) and 7 U.S.C. §§ 9 and 25 for violations of the Commodity Exchange Act (the "Act"); (ii) 28 U.SC. § 1332 (diversity of citizenship) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs; and (iii) 28 U.S.C. § 1367 (supplemental jurisdiction), as other claims are so related to the claims in this action that they form a part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391 and 7 U.S.C. § 25 (c), as the judicial district wherein a substantial part of the events or omissions giving rise to the claim occurred and the Defendant is

found, resides and transacts business.

3.     All conditions precedent to the commencement and prosecution of this action, if any, have been performed, satisfied, waived, or excused.

## THE PARTIES

4.     Plaintiff, J. Henry Kremers ("Kremers"), is an individual and citizen of the State of Texas.

5.     Defendant, Joseph Glenn Commodities, LLC ("JGC"), is a limited liability company formed and organized under the laws of the State of Florida, and maintains its principal place of business in Palm Beach County, Florida.

6.     Defendant Anthony J. Pulieri ("Pulieri"), is the Owner and Chief Investment Officer of JGC, and an individual and citizen of the State of Florida with a residency address listed in Palm Beach County.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.     JGC holds itself out as an independent commodities company trading in precious and industrial metals, including gold, silver, and palladium.

8.     In April, 2011, Jennifer Cappel ("Cappel"), a sales representative and account advisor with JGC placed several unsolicited telephone call to Mr. Kremers.

9.     During these telephone calls, Cappel touted the benefits of investing in gold and other precious metals, and solicited Kremers to open an account with JGC for the purchase and sale of gold and other precious metals.

10.     Kremers finally agreed to open a self-directed, non-discretionary account with JGC for a single purchase of gold for physical delivery.

11.     Kremers advised Cappel that he was only interested in gold, and not interested in

any other precious metals.

12.    On or about April 22, 2011, JGC delivered, via facsimile to Kremers, an Account Opening Procedures and a Customer Profile form.

13.    By letter dated April 25, 2011, Kremers sent via Federal Express, the completed Customer Profile and a check in the amount of $100,000.00 for an investment in gold through JGC.

14.    In May, 2011, Kremers received a "Trade Confirmation" reflecting a purchase on April 28, 2011, of 160 ounces of gold at $1,578.96 per ounce for the total amount of $252,633.60. A true and accurate copy of the Trade Confirmation is attached as **Exhibit "A"** to this Complaint.

15.    With the Trade Confirmation, Kremers also received a notice representing that the gold commodities were delivered to a custodian, which JGC titled a "Transfer of Commodity." A true and accurate copy of the Transfer of Commodity is attached as **Exhibit "B"** to this Complaint.

16.    Kremers intended and understood based upon Cappel's representations that the $100,000.00 would be invested with JGC for the cash purchase of physical gold, but the Trade Confirmation he received reflected a leveraged purchase of $252,633.60, of which $179,364.86 was financed.

17.    Kremers promptly contacted JGC to dispute the use of leverage for his gold investment.

18.    Cappel justified JGC's decision to use leveraging of the gold purchase in Kremers' account by telling Kremers his account would generate greater profits with minimal risk as gold prices continued to rise.

19.    Cappel provided Kremers with online access to a Customer Purchase & Sale Agreement and a Customer Loan, Security & Storage Agreement, and Mr. Kremers' digital

signature was placed on both agreements and dated May 13, 2011.

20.     Following receipt of the Trade Confirmation in May 2011 , Kremers attempted but was unable to determine the status of his account as JGC failed to send any account statements to Kremers.

21.     On several occasions, Kremers called JGC to request access to his account statements, and each time he was transferred to Pulieri, Chief Investment Officer and owner of JGC, who advised him he could access his account information online but was told that the computer was down each time he called.

22.     No JGC account statements were ever sent to Kremers until December, 2011 and he was never able to access his account online.

23.     Also, during this period, on those occasions when Kremers called JGC and was directed to speak with Pulieri, Pulieri  unsuccessfully attempted to induce Kremers to invest more money with JGC.

24.     On or about September 14, 2011, Kremers received a "Position Reconciliation" notice from the Delaware Depository Service Company ("DDSC").  A true and accurate copy of the Position Reconciliation is attached as **Exhibit "C"** to this Complaint.

25.     This Position Reconciliation notice reflected a purchase of 350 oz. of silver in his account with JGC.

26.     Kremers never authorized nor directed the purchase of silver in his account with JGC.

27.     Kremers  promptly called JGC who directed him to speak with Pulieri.

28.     Pulieri defended his actions to Kremers by stating that JGC acted to sell his gold and to purchase silver to protect his investment since the price of gold was heading in a negative

direction.

29.     In response to Kremers' demand that he rescind the transaction as he never authorized the sale of his gold or the purchase of silver in his account, Pulieri agreed to sell the silver in his account.

30.     Pulieri, during this same conversation, also complained to Kremers that Pulieri could not access Kremer's account because the computer was down.

31.     Kremers received a "Position Reconciliation and Transfer Notice" dated September 29, 2011, from the DDSC. A true and accurate copy of the Position Reconciliation and Transfer Notice is attached as **Exhibit "D"** to this Complaint.

32.     In the Position Reconciliation and Transfer Notice, DDSC stated that Hunter Weiss Services, LLC, a collateral manager, advised DDSC that 350 ounces of silver was shipped out of Kremers account.

33.     Kremers' continued efforts to access his account online through several additional phone calls to JGC were unsuccessful.

34.     Sometime in the fall of 2011, Kremers was told by JGC that Cappel was no longer with the commodities company.

35.     Due to JGC's failure to provide Kremers with account statements and his growing uneasiness with JGC, during the first week of December 2011, Kremers called Pulieri and instructed him to sell everything in his trading account and return his money.

36.     In this telephone conversation, Pulieri represented to Kremers that there were 100 ounces of gold and $11,000.00 in cash in his trading account at JGC.

37.     On December 12, 2011, Pulieri agreed to sell the gold in his trading account at JGC.

38.     At the time of the telephone conversation with Pulieri, Kremers observed that gold was priced at approximately $1,739.00 per ounce.

39.     On or about December 12, 2011, Kremers received in the mail JGC Account Statements for November, October, September, August, July, June, May, and April 2011, and a check for $1,100.51. Copies of these account statements are attached as composite **Exhibit "E"** to this Complaint.

40.     With the single exception of the initial $100,000.00 purchase of gold reflected in the Trade Confirmation received by Kremers in May 2011, and the unauthorized purchase of silver in September 2011, none of the trading activity in silver, palladium or copper, leverage, commissions, interest or fees identified in the JGC Account Statements was ever authorized by, or disclosed to Kremers and such failure to disclose was caused by active concert and conspiracy by Defendants.

41.     Kremers has retained the undersigned Law Firm and is obligated to pay the fees and reimburse the costs incurred in connection with this litigation.

## COUNT I
### (Violations of the Commodity Exchange Act)

42.     Each of the allegations set forth in paragraphs 1 though 40, inclusive, of the Complaint are incorporated, with the same force and effect as if fully restated.

43.     This is a claim by Kremers against JGC and Pulieri under Section 22 of the Act, 7 U.S.C. § 25(a)(1), for violations of 7 U.S.C. § 9, and the regulations promulgated thereunder.

44.     JGC, through its agents and employees and at the direction of Pulieri, have violated 7 U.S.C. § 9 and 17 C.F.R § 31.3.

45.     Specifically, JGC and Pulieri used the mail and other instrumentalities of interstate commerce to violate Regulation 17 C.F.R. § 31.3 (fraud in connection with certain

transactions in silver or gold bullion or bulk coins, or other commodities), directly and indirectly, by:

      (a)     employing a device, scheme, or artifice to defraud;

      (b)     making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading; and

      (c)     engaging in conduct, practices, and course of business which operates a fraud and deceit;

all in connection with the leveraged purchase, sale and delivery of gold, silver, and other commodities in Kremers' leveraged account.

      46.     Pulieri controlled JGC and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting violations of the Act, 7 U.S.C. § 9, and of 17 C.F.R. § 31.3, and is therefore liable for these violations under 7 U.S.C. § 25(a)(1).

      47.     JGC and Pulieri, by and through their agents, including Cappel, intentionally, willfully, knowingly, and/or recklessly engaged in unauthorized and leveraged trading in Kremers' leveraged account, and charged him unauthorized, undisclosed, and unreasonable commissions, interest, and fees in connection with the purchase, sale, and delivery of gold, silver, palladium and other commodities.

      48.     JGC and Pulieri, by and through their agents, including Cappel, intentionally, willfully, knowingly, and/or recklessly made untrue and misleading statements, and omitted to state material facts necessary to make other statements not misleading and true.

      49.     These untrue and misleading statements and omissions of material fact were made by JGC and Pulieri with the intention and purpose of inducing Kremers to rely upon them in

deciding to open and maintain an account and invest $100,000.00 with JGC.

50.     In reasonable reliance on JGC's untrue misleading statements and omission of material facts, Kremers opened a trading account and invested $100,000.00 with JGC.

51.     As a direct and proximate result of JGC's and Pulieri's wrongful conduct and violations of the Act, including Regulation 17 C.F.R. § 31.3, Mr. Kremers has suffered damages, including the loss of virtually all of his $100,000.00 investment.

WHEREFORE, Plaintiff, J. Henry Kremers, demands judgment against Defendants, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri, jointly and severally, for compensatory damages, exemplary damages, interest and costs, and such other relief as may be just and appropriate.

## COUNT II
### (Violations of Florida's Securities and Investor Protection Act)

52.     Each of the allegations set forth in paragraphs 1 though 40, inclusive, of the Complaint are incorporated, with the same force and effect as if fully restated.

53.     This is an action by Kremers against JGC and Pulieri for violations of the Florida Securities and Investor Protection Act (the "Florida Act"), Fla. Stat. Ch 501, and the regulations promulgated there under, and damages in excess of the sum of $75,000.00 exclusive of interest and costs.

54.     JGC and Pulieri, individually and as an officer and agent of JGC, are each a "person purchasing or selling a security in violation of" the Florida Act, Fla. Stat. § 517.301, who are jointly and severally liable to Plaintiff under the Florida Act, Fla. Stat. § 517.211(2).

55.     Kremers' delivery of $100,000.00 to open a trading account with JGC was a commitment of money induced by representations that an economic benefit may be derived from such commitment, and constitutes an "investment" within the meaning of the Florida Act, Fla.

8

Stat. §517.301(2).

56.   JGC and Pulieri, individually and as an officer and agent of JGC, and each of them, while personally participating and assisting in the offer for sale and sale of commodities, have committed unlawful violations of the Securities Act, Fla. Stat. Section 517.301, by:

(a)   deploying a device, scheme and artifice to defraud;

(b)   obtaining money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(c)   engaging in transactions, practices, and a course of business which operate a fraud and deceit; and

(d)   knowingly and willfully falsifying, concealing, and covering up by trick, scheme, and device, material facts, making false, fictitious, and fraudulent statements and representations, and making or using false writings and documents, knowing the same to contain false, fictitious, and fraudulent statements and entries;

all in connection with JGC's and Pulieri's offers for sale and sale to Kremers of the investment in the leveraged trading account.

57.   As a direct and proximate result of JGC's wrongful conduct and violations of the Florida Act, Fla. Stat. Ch. 517, Kremers has suffered damages, including the loss of virtually all of his $100,000.00 investment, and as recoverable under the Florida Act, Fla. Stat. §517.211(2).

WHEREFORE, Plaintiff, J. Henry Kremers, demands judgment against Defendants, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri, jointly and severally, for compensatory damages, plus attorneys fees pursuant to Fla. Stat. §517.211(6), interest and costs, and such other and further relief as may be just and appropriate.

### COUNT III
### (Common Law Fraud)

58.     Each of the allegations set forth in paragraphs 1 though 40, inclusive, of the Complaint are incorporated, with the same force and effect as if fully restated.

59.     This is an action by Kremers against JGC and Pulieri, individually and as agent of JGC,   for fraud and damages in excess of the sum of $75,000.00, exclusive of interest and costs.

60.     JGC and Pulieri, and each of them, through their agents and employees, including Cappel, intentionally misrepresented material facts, made untrue statements, and failed to disclose all material facts necessary to make other representations to Kremers accurate.

61.     The misstatements and omissions of material fact by JGC and Pulieri each and all operated to deceive and defraud Kremers, and were made with the purpose and effect of inducing Kremer to invest $100,000.00 in a trading account through JGC.

62.     By the end of April, 2011, and in reasonable reliance upon these representations and omissions, Kremers invested $100,000.00 and opened up a trading account with JGC.

63.     These actions, omissions, misrepresentations on the part of JGC and Pulieri were willful, unwarranted, outrageous, malicious, and carried out with the improper design, purpose and effect of defrauding Kremers for the economic benefit of JGC.

64.     As a direct and proximate result of, and in reliance upon JGC's and Pulieri's misrepresentations, omissions, and other fraudulent conduct, Kremers has suffered substantial damages, including the loss of virtually all of his $100,000.00 investment.

WHEREFORE, Plaintiff, J. Henry Kremers, demands judgment against Defendant, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri, jointly and severally, for compensatory and punitive damages, interest and costs, and such other and further relief as may be just and appropriate.

## COUNT IV
### (Conversion)

65.     Each of the allegations set forth in paragraphs 1 though 40, inclusive, of the Complaint are incorporated, with the same force and effect as if fully restated.

66.     This is an action by Kremers against JGC and Pulieri for conversion and damages in excess of the sum of $75,000.00, exclusive of interest and costs.

67.     JGC and Pulieri, individually and as an agent of JGC, through their conduct, wrongfully asserted dominion over Kremers $100,000.00 investment and trading account inconsistent with Kremers' ownership interest.

68.     Between April and December, 2011, JGC and Pulieri converted to their own personal use Kremers' $100,000.00 investment and his trading account with JGC.

69.     This wrongful conduct on the part of JGC and Pulieri was willful, unwarranted, outrageous, malicious, and carried out with the improper design, purpose and effect of converting Kremers money and property for the economic benefit of JGC.

70.     As a direct and proximate result of JGC's and Pulieri's wrongful conduct, Kremers has suffered damages, including the loss of virtually all of his $100,000.00 investment.

WHEREFORE, Plaintiff, J. Henry Kremers, demands judgment against Defendant, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri, jointly and severally, for compensatory and punitive damages, interest and costs, and such other and further relief as may be just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff, J. Henry Kremers, demands a jury trial on all issues in this action triable by a jury.

## RESERVATION OF RIGHTS

Plaintiff, J. Henry Kremers, hereby reserves the right, upon completion of investigation and discovery, to assert such additional claims against Defendant, Joseph Glenn Commodities, LLC, and Anthony J. Pulieri and other responsible parties as may be just and appropriate under the circumstances and permitted by the Court.

Dated this 11th day of May, 2012.

Respectfully submitted,

BUCKINGHAM, DOOLITTLE
& BURROUGHS, LLP


s/Garry W. O'Donnell
Garry W. O'Donnell, Esq.
Florida Bar No: 0478148
Rose M. Schindler, Esq.
Florida Bar No: 0980080
5355 Town Center Road, Suite 900
Boca Raton, Florida 33486
Telephone: (561) 241-0414
Facsimile: (561) 241-9766
godonnell@bdblaw.com
rschindler@bdblaw.com

Attorneys for Plaintiff, J. Henry Kremers

«BOCA:286699_v2/74592-0001»